TRAPHAGEN v. DONIHEE et al.

(Supreme Court, Appellate Division, First Department.    April 22, 1898.)

MORTGAGE—BONA FIDE ASSIGNEE.

In an action brought by an assignee for full value of a mortgage upon real property, to foreclose it, the defense was that the plaintiff took the assignment, subject to certain equities, consisting, as alleged, in the fact that the mortgage had been executed and delivered only to be used in a certain transaction, on a certain day, and for a certain purpose, and that it had been fraudulently used for other purposes.    The defense rested chiefly on the testimony of one witness, who was plainly contradicted on the essential facts, and there was direct evidence in opposition to defendant's claim.    Held, upon a review of the evidence, that the conclusion of the trial judge, in favor of the plaintiff, was correct.

Appeal from special term, New York county.

Action by Caroline R. Traphagen against William B. Donihee and others.    From a judgment of foreclosure and sale, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Chas. Haldane, for appellants.
Fettretch, Silkman & Seybel, for respondent.

PATTERSON, J.    The mortgage, to foreclose which this action was brought, was given by Mr. and Mrs. Donihee to William C. Traphagen on the 18th day of November, 1892.    Three days afterwards, Traphagen assigned it to George H. Yeaman, as part security for a claim in Mr. Yeaman's hands for enforcement against Traphagen and another.    At the same time, additional security was given by Traphagen to Mr. Yeaman, consisting of a second mortgage upon property in the city of New York, belonging to Caroline R. Traphagen, this plaintiff. When the security was thus given to Mr. Yeaman, an agreement was executed by which he contracted to transfer to Mrs. Traphagen the mortgage now in suit, upon the payment of the indebtedness of William C. Traphagen, secured by the two mortgages mentioned.    That debt

was paid to Yeaman out of the proceeds of a sale of Mrs. Traphagen's property; $7,000 of such proceeds being represented by a check to her order, indorsed by her, and given to Yeaman, in consideration of which, on the 1st of May, 1893, he assigned to her the mortgage the subject of this action. It is therefore made to appear conclusively, notwithstanding the defendant's claim to the contrary, that Mrs. Traphagen paid full face value for this mortgage. The defense interposed by Mrs. Donihee, one of the mortgagors, is that the plaintiff took the assignment of the mortgage, subject to certain equities affecting it in the hands of the mortgagee, William C. Traphagen, by reason of which equities the security is not enforceable against the mortgaged premises. Stated in a few words, these alleged equities are that the mortgage now in suit was executed and delivered only to be used in a certain transaction, on a certain day, and for a certain purpose; and that Traphagen, instead of dealing with it in the appointed and only authorized way, fraudulently used it for his own purposes.

It is indisputable upon the record that, for some time prior to the execution and delivery of this mortgage, the Donihees were indebted to Traphagen in some amount. As early as June, 1891, there was an existing indebtedness to him, which is admitted in the answer. On the 16th of June, 1891, the premises covered by the mortgage now in suit were conveyed by the Donihees to him. Whether that conveyance was intended to be absolute, or was given as security for the indebtedness and moneys to be advanced subsequently by Traphagen to the Donihees, it is not important now to consider. Mrs. Donihee conveyed by that deed certain premises on Bradhurst avenue, at the corner of 143d street, having a frontage on the avenue of 129 feet and 11 inches, and on the street of 125 feet. In the same deed was embraced another piece of property contiguous to that last mentioned, having a frontage of 50 feet on 148th street, and a depth of 129 feet 11 inches. Lying still to the north of and adjoining the plot last described was a parcel of land with a frontage on Edgecomb avenue of 129 feet and 11 inches, and on the street of 50 feet. Mrs. Donihee claims that Traphagen was employed by her to acquire the title to the parcel fronting on Edgecomb avenue for her, so that she would be entitled, on a general settlement and adjustment of his relations with her, to a conveyance from him of the whole parcel fronting on Bradhurst avenue and on Edgecomb avenue and on 148th street. It appears in evidence that Traphagen made some slight effort to buy the Edgecomb avenue front, and negotiated with the broker of the owner of that parcel, but never took title. That property, however, was purchased by D. G. Crosby, who bought it from the owner, paid for it with his own money, and there is nothing whatever in the record which would in any way charge him with accountability to the Donihees, or any one else, for that purchase. On the 18th day of November, 1892, the property was then in this situation: The legal title to the Edgecomb avenue front, being 129 feet and 11 inches on that avenue, and 50 feet on 148th street, belonged to Crosby. The other two parcels, with a frontage of 175 feet on 148th street and 129 feet and 11 inches on Bradhurst avenue, was held by Traphagen. The Donihees had no claim, either legal or equitable, on Crosby for a conveyance of the land purchased by him.

Whether they had an equitable claim or not on Traphagen was a matter in controversy.    That they asserted a right of some kind to all the property is also clear, and it is also clear that Traphagen denied it so far as he was concerned.    It is alleged by Mrs. Donihee, as her specific defense to this mortgage, that prior to the 18th day of November, 1892, a plan had been discussed or adopted by Crosby, Traphagen, and herself, pursuant to which the whole property should be conveyed to her upon certain terms, which would settle all the rights of the parties and all controversy between them, and adjust whatever claim Traphagen might have against her on account of the property. Her contention is that Mr. Crosby was to be paid $15,000 in money for a conveyance of the land on Edgecomb avenue; that this $15,000 was to be raised by a mortgage to be given by her, the arrangement for which had been made with the attorneys of a proposed mortgagee; that Mr. Crosby was to receive $4,000 more, making $19,000; that Traphagen was to receive $2,000; and that the $4,000 to Crosby and the $2,000 to Traphagen were to be included in and represented by the $6,000 mortgage now in suit.

It is further claimed that the whole transaction was to be consummated on the 18th of November, 1892, at the office of the attorneys for the lender of the $15,000; that the $6,000 mortgage now in suit was given to Traphagen, to be used only in that settlement, and on that occasion, and as part of the transaction finally adjusting and quieting the claims and rights of all the parties to the whole of the piece of property bounded by the avenue and the street above referred to. It was necessary for the defendant to show that the mortgage was given with a limitation of its use to the one particular transaction. Mrs. Donihee testified that, very early on the morning of the 18th of November, Mr. Traphagen came to her house with a notary public, and produced the $6,000 mortgage; that she then executed that mortgage, gave it to the notary public, with express instructions that it was not to be used except in the transaction referred to.    On the trial the notary public was sworn as a witness, and positively testified that no such statement was made by Mrs. Donihee, and no limitation whatever was put upon the delivery of that mortgage.    Mr. Donihee testified to the arrangement which is claimed to have been made, and that he went to the office of the attorneys, at which place the alleged transaction was to be closed on the 18th of November, and was there informed that it would not be closed; that Mr. Crosby had virtually retired from it.    But Mr. Green, who had the matter in charge for the attorneys, testifies that the transaction was not to be closed on the 18th; that there was no intention to close it then; that it could not have been closed that day, nor before December; that the searches were not in readiness until the 22d of December; and that he had no recollection whatever of seeing Mr. Donihee on the 18th of November, and the reason that Crosby did not carry out the transaction was that on the 29th of November, 1892, a large assessment was confirmed upon the property.    Mr. Crosby testified that no arrangement was made by which he was to be interested in any mortgage of $6,000; that he was promised directly a mortgage of $4,000, which was to be a second mortgage; that his interest was not in any

way associated with Traphagen's. Mr. Donihee testified that he had been in the office of Mr. Green with Mr. Traphagen and Mr. Schermerhorn, who was to lend the money, and that the arrangement was talked over between them. Mr. Green testified that he had no interview with Mr. Donihee concerning the $15,000 loan in the presence of Mr. Traphagen; that he could not testify he ever saw Mr. Donihee, Traphagen, and Schermerhorn together in his office; that he did see Donihee in relation to the matter, but he thinks that Donihee was alone; and he also swore that he was very sure no appointment was made with Donihee to close the proposed $15,000 loan before December 21, 1892. The establishment of the defense rested principally, if not altogether, on the testimony of Mr. Donihee, and he was plainly contradicted on the essential facts. which were the foundation of that defense. It further appeared that after Traphagen, on the 18th of November, 1892, had conveyed the premises to Donihee, the latter conveyed them to one Smith, who immediately retransferred them to Mrs. Donihee. In the conveyance from Donihee to Smith was a statement that it was made subject to mortgages then outstanding on the property. One of them was the $6,000 mortgage now in suit, the other being a $10,000 mortgage to a Brooklyn corporation. There can be no mistake concerning this, for Donihee swears that he did not know until after he conveyed to Smith that there was still another and prior mortgage upon the property of $2,000 which Traphagen had given to Crosby.

Upon this state of the record, the justice, at special term, could not have found that the defense to the mortgage was made out. It may be that some general arrangement and understanding for clearing up the title to the property, and putting all in the Donihees, had been reached; but it could not be adjudged that the mortgage now in suit, and given to Traphagen, was not so given to him in consideration of his reconveyance of the property to Mrs. Donihee, or that there had been such an understanding between Crosby, Traphagen, and the Donihees as Mr. Donihee testified to. Nothing is to be inferred from the use made by Traphagen of the mortgage and the reconveyance of the property by him on the day he received the mortgage. That is altogether compatible with an honest purpose. Mr. Traphagen died in the latter part of October, 1894. The mortgage, therefore, was outstanding for two years before his death. No attack was made upon it, nor Traphagen's relations to it challenged by any action on the part of the Donihees during his lifetime.

Without reference to further facts that might be adverted to, the foregoing is sufficient to show that the conclusion reached by the court below was right. There are no exceptions to the admission or rejection of evidence requiring consideration.

The judgment appealed from must be affirmed, with costs. All concur.